[Civ. No. 1589.   Fourth Appellate District.—March 25, 1936.]

GERTRUDE M. ENGLE, Respondent, v. AETNA CASUALTY INSURANCE COMPANY (a Corporation), Appellant.

Swing & Swing for Appellant.

Hert & Withington for Respondent.

JENNINGS, J.—The plaintiff instituted this action to recover from the defendants the sum of $355.50 for charges made for hospital care and nursing furnished to one Anna Angjelich. The complaint alleged that the defendants had employed plaintiff to furnish hospital care and nursing to the above-mentioned person and to pay the reasonable value thereof and that the sum specified was a reasonable charge for the services rendered. Subsequent to the filing of the above-described pleading a supplemental and amended complaint was filed wherein it was alleged that the defendants had employed a certain physician to furnish and perform professional services for "Anna Angjelich, minor child of the defendant, Sam Angjelich", and agreed to pay to said physician the reasonable value of such medical services as he should render to said child, that,. pursuant to such agreement, the physician rendered services to the minor which were of the reasonable value of $550 and prior to the institution of the action sold and assigned to plaintiff his claim against the defendants. The prayer of the last-mentioned pleading was for judgment against the defendants for the total amount of the two claims. The defendants named in the action are Mrs. N. B. Jones, The Aetna Casualty Insurance Company and the parents of Anna Angjelich. The record shows that prior to the trial of the cause, the parents of the minor had failed to make an appearance in the case, their default had been entered, and judgment by default had been taken against the defendant, Sam Angjelich and that

the action had been dismissed as to the defendant Mrs. N. B. Jones. The trial, which was had before the court without a jury, resulted in the entry of a judgment against the Insurance Company for the full amount demanded in the supplemental and amended complaint. From the judgment thus rendered the insurance company appeals.

Examination of the transcript on appeal discloses that on June 14, 1932, in the city of Colton, Anna Angjelich was struck by an automobile which was owned by Mrs. N. B. Jones and as a result thereof the said minor sustained personal injuries which necessitated hospital care and medical attention. It further appears that on the above-mentioned date the injured child was taken to respondent's hospital in the city of Colton where she remained for approximately two and a half months, during which time nursing care and services usually rendered in such an institution were furnished to her. It also appears that medical attention was required by the injured child and that such services were rendered by Dr. D. B. Williams. It further appears that Mrs. N. B. Jones, the owner of the automobile which caused the injuries, held an insurance policy issued by appellant, presumably of the type popularly known as a "Public Liability Policy". The evidence presented during the trial disclosed that, on September 18, 1933, the said minor, through her father as guardian *ad litem,* brought an action against Mrs. N. B. Jones, the owner of the automobile, and Leonard M. Walker, who was operating the car at the time of the accident, whereby she sought to recover general damages in the amount of $50,000 for the personal injuries suffered by her and special damages in the amount of $905.50, consisting of $550 for medical services and $355.50 for hospital care, that this action proceeded to trial on February 20, 1934, and resulted in the entry of a judgment in favor of the defendants based on the trial court's findings that the defendants were in no respect guilty of negligence in the operation of the automobile and that plaintiff's injuries were caused solely by her own negligence.

Respondent by this action sought to impose liability on appellant for the expenses of hospitalization and medical care on the basis that an agent of appellant had orally agreed to pay such expenses. It was also claimed that after the services had been performed appellant ratified the agreement.

The evidence concerning the making of the agreement and its ratification by appellant consisted of the testimony of Dr. Williams and of the respondent. The former testified that, approximately four days after the child had suffered the injuries which necessitated hospitalization and medical care, a Mr. Cameron called on the physician at his office in the Colton hospital, introduced himself as a representative of the Aetna Casualty Insurance Company, and inquired concerning the injuries; that the witness explained the nature of them and told Cameron that the child's father was poor and had no money to pay for the services that would be required; that the witness then said to Cameron: "And I want to know if your company will stand for it because it is going to be a long and expensive thing for me and the hospital"; that Cameron instructed the witness to go ahead "because we feel that our insured was definitely at fault, and therefore I think it would be best for you to go ahead and take care of the case in the best way you possibly can, giving the girl an anaesthetic to set the leg and thigh, if necessary, and take all the necessary precautions, and we will pay for those services and X-rays". This witness further testified that he again saw Cameron about a week after the accident at which time Cameron informed him that he had visited the home of the injured child and had verified the physician's prior statement regarding the poverty of the child's father and said: "And therefore it looks like we are definitely, . . . stuck for this bill, and I have made inquiry of the Mashburn Grocery Store, which was at the corner where the accident occurred, and apparently our insured was at fault." The same witness testified that on December 10, 1932, a Mr. Thiele called upon him and represented himself as the manager of the branch office of the Aetna Casualty Insurance Company at 810 South Spring Street in the city of Los Angeles; that the witness said to Thiele: "Mr. Angjelich has definitely said he could not pay for the care of the child in any way, that he was out of work and was not able to pay, and therefore whom should I look to for the money?" to which inquiry Thiele replied: "I understand Mr. Angjelich is going to bring suit against the company, but regardless of that you have done your work with the child and have produced a cure as near as we can tell, and we will be responsible for the bill regardless of whether the case is lost or not in court."

The respondent testified that the child was brought to her hospital on June 14, 1932, and remained there until discharged on September 2d of the same year; that the witness went to the office of appellant in the city of Los Angeles some time during the month of July, 1932, and inquired for Mr. Cameron; that she was directed to Cameron's office by a stenographer and that she then had a conversation with Cameron in which she stated that the hospital bill would be an unusually large bill and for this reason she wished a written agreement by the company to pay the bill to which request Cameron replied that it was not at all necessary because there was not the slightest doubt that the hospital bill would be paid regardless of suit and regardless of the outcome of any possible suit that the parents might bring against the insurance company.

It may properly be observed at this point that the above-described evidence did not in the slightest degree establish the necessary element of authorization on the part of Cameron to make the agreement which forms the basis of respondent's cause of action or of Thiele's authority to ratify it. This was recognized by respondent for, after the above evidence had been introduced, counsel for respondent requested a continuance of the case "for the purpose of getting further information, either by deposition or otherwise, as to the authority of those men to make the promises that were made in this case". The requested continuance was granted and Mr. Thiele's deposition was taken and produced in evidence by the respondent. This witness testified that he was the superintendent of the claims department of appellant with an office in Los Angeles and that his duties consisted of supervising the investigation and adjustment of claims against the company and that occasionally he adjusted such claims. The witness testified that Cameron was employed by appellant as an investigator and adjuster and that his duties were to investigate and adjust claims against policyholders "according to the contracts they held" under the control of the witness and that he was authorized to issue checks for the payment of claims "for which the company was liable under the policy but for no others". The witness further testified that checks in payment of claims issued by Cameron were paid by the insurance company "if they were for claims for which the company was liable under the policy". On cross-examination the witness

testified that Cameron did not determine the liability of appellant under policies of insurance issued by the company but that this duty devolved upon the witness who determined it with the assistance of the company's attorneys; that Mrs. N. B. Jones was a policyholder of appellant at the time the accident occurred and that the matter of the policyholder's liability for hospital and medical expenses was determined in the action brought by the injured minor against the policyholder; that prior to the trial of the last-mentioned action the witness was advised that appellant was not liable for any damages which had been sustained as a result of the accident. The witness also testified that Cameron had no authority to settle any claim growing out of the accident in which Mrs. Jones was involved and that he was not authorized to make preliminary arrangements for the care of anyone injured by a policyholder of appellant as the policy contained no provision for making such payments.

Upon the completion of the trial and after the case was submitted for decision the trial court found "that all the allegations contained in the plaintiff's complaint are true, as to the Aetna Casualty Insurance Company", and "that all the allegations contained in the plaintiff's supplemental and amended complaint are true, as to the Aetna Casualty Insurance Company". From the findings thus made the court drew the conclusion that the appellant is indebted to respondent in the amount of $550 on the claim assigned to her by the physician and in the further amount of $355.50 for hospital care furnished to the minor.

Examination of the complaint and supplemental complaint whose allegations were thus generally adopted by the court as its findings of fact discloses that in the former pleading it is alleged "that on or about the 14th day of June, 1932, the said defendants, and each of them, employed the plaintiff herein to nurse, board and room one Anna Angjelich, and to give to said Anna Angjelich such hospital care, treatment and hospitalization as the said Anna Angjelich should require, and that pursuant to said employment the said plaintiff furnished nursing, board, room, hospital care and hospitalization to the said Anna Angjelich of the reasonable value of $355.50, and that said defendants and each of them agreed to pay this plaintiff the reasonable value thereof". The latter pleading alleges that within three years prior to its filing all of the

defendants in the action employed Dr. D. B. Williams to furnish and perform professional services for the minor and that each of said defendants agreed to pay the above-named physician the reasonable value of such medical services as he should render to said child and that ''pursuant to said agreement'' the said physician performed services for said minor between June 14, 1932, and October 15, 1932, of the reasonable value of $550 and that prior to the institution of the action the physician assigned his claim for such services to the respondent.

Analysis of the above-described allegations adopted by the trial court as its findings of fact in the light of the undisputed evidence produced during the trial of the action impels the conclusion that they are not supported by the evidence.

In the first place, no evidence was produced which tended to show that any obligation rested upon appellant to furnish medical attention or hospitalization to Anna Angjelich. The policy of insurance which appellant had issued to its insured, Mrs. N. B. Jones, was not produced. Respondent obviously did not rely on the provisions of the insurance policy in her endeavor to fasten liability on appellant for the expenses of hospitalization and medical attention. What she did rely on was an independent agreement to pay such expenses allegedly made by an agent of appellant who was authorized to enter into such a contract. At first blush, it might seem that the judgment permitting recovery for the full amount of the two claims may be sustained under the familiar doctrine of equitable estoppel. Analysis of the evidence, however, demonstrates the futility of such a course. If it be assumed that the court was justified in concluding that it was within the apparent scope of the authority conferred by appellant on its agent Cameron to enter into an agreement to pay the expenses, it is nevertheless clear that no such agreement was made until four days after the child was received in the hospital, at which time, according to the physician's testimony, Cameron, in response to the doctor's inquiry as to whether the company would ''stand for'' the expenses, instructed the physician to go ahead and take care of the case ''and we will pay for those services and X-rays''. However, the allegedly reasonable amount of the physician's claim was for services performed between June 14, 1932, and October 15, 1932. What part of

these services was rendered between June 14th and the time four days later when, for the first time, appellant's agent instructed the doctor to go ahead does not appear and there is no possibility of discovering it from the evidence submitted. Whether the physician during this four-day period had performed no services for the injured child or services of slight value or, on the contrary, had performed services of considerable value is impossible of determination. In any event, it is apparent that no recovery for whatever services had been performed by the physician during the four-day period would be recoverable under the allegations of the supplemental complaint and the doctrine of estoppel would not render appellant liable for what had been done at the time the representation was made by the agent. ▮ Furthermore, it must be observed that no connection between the physician and the hospital was shown by the evidence and it does not appear that the statements which were made to the physician were communicated to the respondent. The evidence shows that at some indefinite date in the month of July, 1932, respondent first saw the agent Cameron, at which time she requested a written agreement by appellant to pay the hospital bill, whereupon Cameron stated that a written agreement was not at all necessary because there was not the slightest doubt that the hospital bill would be paid regardless of the outcome of any possible suit which the parents of the child might bring against appellant. The indefiniteness of this statement precludes the possibility of its being regarded as an agreement by appellant to pay the entire expense of hospitalization. Further, the important element of consideration is entirely lacking. Additional difficulty is encountered in attempting to sustain the trial court's finding that appellant agreed to pay the hospital expenses on the theory of estoppel. Appellant may not be estopped to deny liability for the expenses of hospitalization which had been incurred prior to the time the statement was made. It is impossible to determine from the evidence what part of the total charge for hospital care had been incurred prior to the time the agent's statement was made. Respondent was the sole witness who testified regarding the making of the statement and was unable to fix the time when it was made more definitely than that it was made some time during the month of July, 1932.

694

Consideration should be given to certain evidence admitted by the trial court regarding a statement purportedly made by the superintendent of the claims department of appellant to Dr. D. B. Williams on December 10, 1932. The physician testified that on the above-mentioned date Mr. S. C. Thiele, who represented himself as the manager of appellant's branch office at 810 South Spring Street in the city of Los Angeles, came to the office of the witness in the city of Colton and in response to the physician's inquiry as to whom he should look for the charges made for medical services rendered the injured child whose father was unable to pay such charges, replied: "I understand Mr. Angjelich is going to bring suit against the Company, but regardless of that you have done your work with the child and have produced a cure as near as we can tell, and we will be responsible for the bill regardless of whether the case is lost or not in court."

The record shows that the above-quoted evidence was admitted under the theory that it constituted a ratification of the original contract made by the agent Cameron. Without regard to whether the evidence was properly admitted or not it is apparent that it could not constitute a ratification of a prior agreement by appellant to pay hospital and medical charges. In the first place, the evidence related solely to charges made for medical services and obviously could not be considered as amounting to a ratification of any prior agreement to pay hospital expenses. In the second place, it could only be regarded as ratification of a prior agreement to pay charges for medical services an undetermined part of which had been rendered at the time the agreement was made. In the third place, it is plainly an oral agreement to answer for the debt of another and unenforceable because not in writing. (Sec. 1973, Code Civ. Proc.; *Flournoy* v. *Van Campen,* 71 Cal. 14 [12 Pac. 257]; *Swim* v. *Juhl,* 72 Cal. App. 363 [237 Pac. 552]; *Huntoon* v. *Powell,* 88 Cal. App. 657 [263 Pac. 1030].) Finally, the evidence did not purport to establish ratification by appellant. It went no further than to show that an agent of appellant recognized the claim of the physician for medical services furnished to the child and declared that appellant would pay such claim. There is no showing that there was any obligation on appellant's part to pay such a claim. There is no showing that appellant had any knowledge of the claim. There is no showing that appellant received any benefit from

the services which the physician rendered to the child. There is not a scintilla of evidence which tends in the slightest degree to prove that the agent possessed any authority to ratify a prior unauthorized contract entered into by another agent. The conclusion is inescapable that the evidence did not in the slightest degree establish ratification by appellant.

Nothing said herein is to be construed as an expression of opinion that no recovery may properly be had from appellant because of a lack of showing that the agent Cameron possessed actual authority to make an agreement to pay hospital and medical expenses. It may be that a recovery may be had on direct contract for such expenses as were incurred subsequent to the dates of statements made by Cameron to respondent and to her assignor. As herein noted the basis of this opinion is that the trial court's findings are not supported by the evidence adduced during the trial of the action.

For the reasons stated the judgment is reversed.

Barnard, P. J., and Marks, J., concurred.